IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA KITCHEN, | ) | |
| | ) | Case No. 1:24-cv-00132 |
| Plaintiff, | ) | |
| | ) | Judge Dan Aaron Polster |
| v. | ) | |
| | ) | OPINION & ORDER |
| ANGIODYNAMICS, INC., *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is AngioDynamics, Inc. and Navilyst Medical, Inc.'s ("Defendants") partial motion to dismiss under Fed. R. Civ. P. 12(b)(6), 8(a)(2), and 9(b). This products liability case stems from Plaintiff's use of Defendants' SmartPort device, which purportedly caused Plaintiff to develop an infection, undergo additional surgery, and sustain physical harm, emotional distress, and financial loss. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' partial motion to dismiss. The Court DISMISSES WITH PREJUDICE Counts 1, 4, 6, and 7 of Plaintiff's amended complaint.

Background and Procedural History

In October 2020, Patricia Kitchen ("Ms. Kitchen" or "Plaintiff") had an AngioDynamics SmartPort implanted, in Cleveland, Ohio, to administer her chemotherapy medication. ECF Doc. 7, ¶ 38. Generally, a SmartPort device is surgically implanted underneath the skin and designed to deliver medications directly into a patient's blood stream. *Id.* at ¶¶ 13-14. In January 2022, Plaintiff experienced symptoms of an infection. *Id.* at ¶ 41. Plaintiff's medical team determined that Ms. Kitchen's SmartPort device had caused her to develop an infection. *Id.* One day later, Plaintiff's medical team removed her SmartPort device. *Id.* at ¶ 42. As a result, Plaintiff alleges that she "experienced significant mental and physical pain and suffering, has

1

undergone additional surgeries, and has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses." *Id.* at ¶ 50.

Plaintiff's SmartPort device "is one of several varieties of port/catheter systems that has been designed, manufactured, marketed, and sold by Defendants." *Id.* at ¶ 12. The SmartPort device consists of two primary components: an injection port and a silicone catheter, the latter of which consists of "a polymeric mixture of silicone and a barium sulfate radiopacity agent." *Id.* at ¶¶ 15, 18. Plaintiff contends that manufacturing and design defects caused Plaintiff's catheter to have "too high a concentration of barium sulfate particles for the polymer formation," which in turn led to "an irregular catheter surface replete with fissure, pits and cracks," and thereby, "drastically increase[ed] the risk of biofilm, infection, and sepsis." *Id.* at ¶¶ 19-24. Additionally, Plaintiff alleges that Defendants did not incorporate design modifications that would have made the SmartPort safer; that Defendants "misrepresented the safety of the SmartPort system;" that Defendants "failed to warn consumers" of the device's higher failure rate compared to similar products on the market; and that Defendants "intentionally concealed the severity of complications caused by the SmartPort and the likelihood of these events occurring." *Id.* at ¶¶ 25, 26, 33, 34.

On January 23, 2024, Plaintiff filed a complaint in the Northern District of Ohio. ECF Doc. 1. The complaint contained six common law product liability claims (Counts 1 through 6) and one claim under the Ohio Consumer Sales Practices Act ("CSPA"), R.C. § 1345.01 (Count 7). *Id.* Specifically, Plaintiff asserted claims of: Negligence (Count 1); Strict Products Liability – Design Defect (Count 2); Strict Products Liability – Failure to Warn (Count 3); Breach of Implied Warranty (Count 4); Breach of Express Warranty (Count 5); Fraudulent Concealment (Count 6); and violations of Ohio's CSPA (Count 7). *Id.*

On March 25, 2024, Defendants filed a motion to dismiss. ECF Doc. 5. One month later, Plaintiff filed her first amended complaint ("amended complaint"). ECF Doc. 7. The amended complaint contains the same seven claims as her original complaint, only now, Plaintiff appears to assert Counts 1 through 5 under the OPLA instead of common law. *Id.* Counts 2 and 3 reference a specific section of the OPLA, while Counts 1, 4, and 5 reference the entire OPLA statute. *Id.* Plaintiff brings the following claims in her amended complaint: Negligence, in violation of R.C. §§ 2307.71, *et seq.* (Count 1); Strict Products Liability – Design Defect, in violation of R.C. § 2307.75 (Count 2); Strict Products Liability – Failure to Warn, in violation of R.C. § 2307.76 (Count 3); Breach of Implied Warranty, in violation of R.C. §§ 2307.71, *et seq.* (Count 4); Breach of Express Warranty, in violation of R.C. §§ 2307.71, *et seq.* (Count 5); Fraudulent Concealment (Count 6); and violations of Ohio's CSPA (Count 7). *Id.*

On May 8, 2024, Defendants filed a partial motion to dismiss Counts 1, 4, 5, 6, and 7 of the amended complaint. ECF Doc. 11. On June 7, 2024, Plaintiff filed her response in opposition. ECF Doc. 16. Two weeks later, Defendants filed their reply. ECF Doc. 21.

Standard

The Court may dismiss a claim when a party fails to plead facts on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The

3

plaintiff is not required to include "detailed factual allegations," but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). In reviewing a complaint, this Court "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018) (citation omitted). As the moving party, Defendants bears the burden of proof. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

OPLA Analysis

Defendants argue that Count 1 (Negligence), Count 4 (Breach of Implied Warranty), and Count 5 (Breach of Express Warranty) are barred because they are common law claims, and the OPLA abrogates all common law product liability claims pled outside of it. ECF Doc. 11-1, PageID# 102. Plaintiff maintains that she "has adequately pled claims pursuant to the Ohio Products Liability Act," and the "sole basis" for Defendants' motion is the fact that the claims "also reference the common law analogues to the statutory provisions of the OPLA." ECF Doc. 16, PageID# 169.

The essential question here is whether the allegations in Counts 1, 4, and 5 of Plaintiff's amended complaint fall within one of the four types of claims permitted by the OPLA. *Lorenzo v. Bristol-Myers Squibb Co.*, 2012 U.S. Dist. LEXIS 105518, at *7 (N.D. Ohio July 30, 2012) ("Because the OPLA abrogates all common law product liability claims, [Plaintiff's] product liability claims must fall under one of the four types of claims permitted by the OPLA: manufacturing defect, design defect, inadequate warning, and noncompliance with manufacturers' representations."). The OPLA abrogates "all common law product liability claims or causes of action." R.C. § 2307.71(B). A "product liability claim" is one that "seeks to

recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question." R.C. § 2307.71(A)(13).

As a threshold matter, Plaintiff does not dispute that under Ohio law, common law product liability claims are abrogated by the OPLA. ECF Doc. 16. Next, Plaintiff acknowledges that her complaint should refer to the specific provision governing her OPLA claims. ECF Doc. 16, PageID# 169; *see Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 844 (S.D. Ohio 2003) ("Claims that are authorized by the OPLA should be pled with reference to the applicable provision of the OPLA."). This is to minimize confusion about what product liability claim is actually alleged and to avoid duplicative claims. *See id*.

Ms. Kitchen contends that she has satisfied this requirement and cited to "specific provisions" or made "specific references to the relevant provisions" of the OPLA. *Id.* at PageID# 167, 169. With respect to the challenged claims (Counts 1, 4, and 5), Plaintiff is incorrect. Counts 1, 4, and 5 do not allege violations of specific OPLA sections. Rather, they cite to the entire Ohio Products Liability Act, and generally assert that Defendants' actions "were in violation of the Ohio Product Liability Act, Ohio Rev. Code Ann. §§ 2307.71, *et seq.*" *Id.* at ¶¶ 65, 106, 119.

### Count 1

Count 1 asserts seven distinct duties that Defendants owed Plaintiff ("a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, selling and conducting post-market surveillance of the SmartPort"), along with seven different ways Defendants breached those duties. ECF Doc. 7, ¶¶ 63, 64(a)-(g).

Plaintiff contends that Count 1 of the amended complaint is pleaded pursuant to the OPLA. But it is identical in form and substance to the common law negligence claim in Count 1 of the original complaint, except for one additional sentence in paragraph 65 that reads: "Additionally, Defendants' actions were in violation of the Ohio Product Liability Act, Ohio Rev. Code Ann. §§ 2307.71, *et seq*." ECF Doc. 1, ¶¶ 62-67; Doc. 7, ¶¶ 62-67. Contrary to Plaintiff's assertions, Count 1 is a common law negligence claim that does not correspond to a specific OPLA provision. "Dressing up" Count 1 with a generic reference to the entire Ohio Products Liability Act does not convert the common law negligence claim into an OPLA claim. *See CCB Ohio LLC v. Chemque, Inc.*, 649 F. Supp. 2d 757, 764 (S.D. Ohio 2009) ("It appears therefore, Plaintiffs are dressing up an OPLA claim as a negligence claim, which really amounts to a common law products liability claim.") (internal quotations omitted)).

Finally, because Count 1 is grounded in Defendants' actions of "designing, manufacturing, marketing, advertising, distributing, [and] selling" the SmartPort device, it falls within the definition of a product liability claim, and is thus, abrogated by the OPLA. ECF Doc. 7, ¶ 63; § 2307.71(A)(13)(a) ("Product liability claim" arises from "the design, formulation, production, construction, creation, assembly . . . or marketing" of a product). Therefore, Count 1 is dismissed.

### Count 4

Ms. Kitchen confirms in her response in opposition that Count 4 is "brought pursuant to a tort action[1]." ECF Doc. 16, PageID# 170. Under Ohio law, " '[i]mplied warranty in tort' is a common-law cause of action that imposes liability upon a manufacturer or a seller for breach of

---

[1] Because Count 4 of the amended complaint is a tort action, not a contract action, Defendants' lack of privity argument in its partial motion to dismiss is moot. *See O.M. v. KLS Martin LP*, 560 F. Supp. 3d 1084, 1091 (N.D. Ohio 2021) ("An implied warranty claim may be brought on a tort-based theory or a contract-based theory. Contract-based claims require privity between the parties; tort-based claims do not.") (internal citations omitted).

6

an implied representation that a product is 'of good and merchantable quality, fit and safe for its ordinary intended use.' " *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 923 (N.D. Ohio 2009) (quoting *White v. DePuy, Inc.*, 718 N.E.2d 450, 454 (12th Dist. 1998)).

Additionally, "the implied warranty claim does not fall into any of the statutorily authorized product liability claims found in the OPLA." *Stratford v. SmithKline Beecham Corp.*, 2008 U.S. Dist. LEXIS 84826, at *21 (S.D. Ohio June 17, 2008). Ohio recognizes implied breach of warranty claims arising from the Uniform Commercial Code, under R.C. § 1302.27, but not under the OPLA. *See Miles v. Raymond Corp.*, 612 F. Supp. 2d at 922 ("Under Ohio law, breach of warranty claims find authority in both the common law and in Ohio's codification of the UCC."); R.C. § 1302.27 Implied Warranty-Merchantability-Usage of Trade-UCC 2-314.

Plaintiff contends that Count 4 of the amended complaint is pleaded pursuant to the OPLA. Yet, it is nearly identical in form and substance to the common law breach of implied warranty claim in the original complaint. ECF Doc. 1, ¶¶ 93-102; ECF Doc. 7, ¶¶ 97-107. Like Count 1, Count 4 also fails to identify a specific OPLA provision under which Plaintiff asserts this claim. Instead, it generally asserts in paragraph 106: "Defendants' breaches of the implied warranties were in violation of Ohio Rev. Code Ann. §§ 2307.71, *et seq*." ECF Doc. 7, ¶ 106.

Finally, the statutory definition of "product liability claim" encompasses claims based on the "failure of that product to conform to any relevant representation or warranty," such as Plaintiff's claim in Count 4 that her SmartPort device failed to comply with Defendants' warranties. § 2307.71(A)(13)(c); ECF Doc. 7, ¶ 103 ("Defendants breached these implied warranties of merchantability because the SmartPort implanted in Plaintiff was neither merchantable nor suited for its intended uses."). Accordingly, Count 4 of the amended complaint is preempted by the OPLA and dismissed.

**Count 5**

In Count 5, Plaintiff asserts a breach of express warranty claim under R.C. §§ 2307.71, *et seq*. ECF Doc. 7, PageID# 74. Like Counts 1 and 4, Count 5 is substantially similar to its predecessor in Plaintiff's original complaint, except for two added paragraphs about privity of contract and a general reference to the entire Ohio Products Liability Act. ECF Doc. 7, ¶¶ 114, 119. Common law claims for breach of express warranty are abrogated by the OPLA. *Stratford v. SmithKline Beecham Corp.*, 2008 U.S. Dist. LEXIS 84826, at *19 (citing *White v. DePuy, Inc.*, 718 N.E.2d at 459). Even so, federal district courts in Ohio have found that allegations for breach of express warranty fall directly into the statutorily authorized product liability claim under R.C. § 2307.77 for "conformance to representation" claims. *See Gordon v. B. Braun Med. Inc.*, 2020 U.S. Dist. LEXIS 53598, at *10 (S.D. Ohio Mar. 27, 2020) ("Claims for breach of express warranty at common law are preempted by R.C. § 2307.77, which governs conformance to representation claims.") (internal quotations and citations omitted); *see also Stratford v. SmithKline Beecham Corp.*, 2008 U.S. Dist. LEXIS 84826, at *19 ("The allegations for breach of express warranty are, however, authorized by Ohio Rev. Code § 2307.77.").

Unlike Counts 1 (negligence) and Count 4 (implied breach of warranty), which did not correlate to one of the four types of permitted OPLA claims, Count 5 (breach of express warranty) does. It falls under R.C. § 2307.77, which provides:

> A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation.

To recover, Plaintiff must show: (1) that the manufacturer made a representation as to a material fact concerning the character or quality of the SmartPort system; (2) that the SmartPort

8

system did not conform to that representation; (3) that Plaintiff justifiably relied on that representation; and (4) that Plaintiff's reliance on the representation was the direct and proximate cause of her injuries. *Gordon v. B. Braun Med. Inc.*, 2020 U.S. Dist. LEXIS 53598, at *11 (citing *Cervelli v. Thompson/Center Arms*, 183 F. Supp. 2d 1032, 1045 (S.D. Ohio 2002)).

Accepting as true the facts alleged in the amended complaint, Plaintiff adequately states a claim for Defect Due to Nonconformance with Representation, under R.C. § 2307.77. Specifically, Plaintiff alleges that: (1) Defendants "expressly warranted that the SmartPort was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous side effects, and was adequately tested and fit for its intended use;" (2) that the "SmartPort does not confirm to the Defendants' express representations because it is not reasonably safe, has numerous side effects, and causes severe and permanent injury;" (3) that "Plaintiff, her physicians, and the medical community reasonably relied upon the Defendants' express warranties for the SmartPort;" and (4) that the breach of Defendants' express warranties was a direct and proximate cause of Plaintiff's physical, emotional, and economic damages. ECF Doc. 7, ¶¶ 109, 110, 113, 118.

Plaintiff satisfied Fed. R. Civ. P. 8(a)(2) and alleged enough facts to "state a claim to relief that is plausible on its face" for Defect Due to Nonconformance with Representation under R.C. § 2307.77 of the OPLA. *Iqbal*, 556 U.S. at 678. Count 5 has sufficient factual content for this Court to draw the reasonable inference that Defendants are liable for the alleged misconduct. This is sufficient to survive a motion to dismiss. *See Doe v. Miami Univ.*, 882 F.3d at 588. Therefore, Defendants' motion to dismiss Count 5 is denied.

9

**Counts 6 and 7**

Defendants move to dismiss Count 6 (fraudulent concealment) of the amended complaint because "the OPLA abrogates fraud-based claims in product liability actions" and because Count 6 fails the heightened pleading standard under Federal Rule of Civil Procedure 9(b). ECF Doc. 11-1, PageID# 103-05. Additionally, Defendants move to dismiss Count 7 (CSPA) because the CSPA statute does not permit recovery for personal injury claims and the Defendants' SmartPort medical device does not qualify as a "good" under the CSPA. *Id.* at PageID# 105-07.

Plaintiff failed to address in her response brief Defendants' arguments concerning Counts 6 and 7. ECF Doc. 16. Defendants note the same deficiency in their reply brief and argue that Plaintiff has waived her opposition to these issues, thereby warranting dismissal of Counts 6 and 7. ECF Doc. 21, PageID# 193, 194. The Court concurs. "Generally, a plaintiff abandons a claim where he fails to respond to a defendant's motion to dismiss that claim." *Crable v. City of Cleveland*, 2024 U.S. Dist. LEXIS 27008, at *12 (N.D. Ohio Feb. 16, 2024) (citing *Humphrey v. United States AG Office*, 279 F. App'x 328, 331 (6th Cir. 2008); *Scott v. Tennessee*, 878 F.2d 382 (6th Cir. 1989) ("noting that if a plaintiff fails to respond or to otherwise oppose a defendant's motion [to dismiss], then the district court may deem the plaintiff to have waived opposition to the motion")). Therefore, the Court finds that by failing to respond to Defendants' arguments on their merits for dismissal of Counts 6 and 7, Plaintiff waived opposition to them. Accordingly, Counts 6 and 7 are dismissed.

Finally, the Court addresses Plaintiff's request for leave to amend her complaint "to cure any alleged defects in the pleadings." ECF Doc. 16, PageID# 170. First, Plaintiff already amended her original complaint under Fed. R. Civ. P. 15(a)(1)(B) after Defendants filed their original motion to dismiss (ECF Doc. 5) and put Plaintiff on notice that her common law claims

must be asserted under the OPLA. This was Plaintiff's opportunity to properly recast those claims under the applicable provisions of the OPLA and cure any defects. Now, Plaintiff may amend her pleading only with Defendants' written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). Defendants oppose Plaintiff's request for leave to amend. ECF Doc. 21, PageID# 198.

Second, Plaintiff's request for leave to amend was a single sentence in her response brief, where she did not state the grounds with particularity or attach the proposed amended complaint to support her request. Rule 7(b) requires that a party requesting leave to amend under Rule 15(a) "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7 (b). Plaintiff did not do so here. Therefore, the Court declines Plaintiff's request for leave to amend. *See Evans v. Pearson Enters.*, 434 F.3d 839, 853 (6th Cir. 2006) (finding no abuse of discretion where a district court denied a plaintiff's request for leave to amend because she "requested leave to amend in a single sentence [in her responses to the defendants' motions to dismiss and for summary judgment] without providing grounds or a proposed amended complaint to support her request").

## Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' partial motion to dismiss. The Court DISMISSES WITH PREJUDICE Counts 1, 4, 6, and 7 of Plaintiff's amended complaint. Remaining before the Court are Counts 2, 3, and 5. The Court denies Plaintiff's request for leave to amend.

IT IS SO ORDERED.

Date: June 28, 2024

*/s/ Dan Aaron Polster*
Dan Aaron Polster
United States District Judge